O
JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re THOMAS ALLEN MEANS and LAURA LEESHA MEANS<br><br>Debtors,<br><br>THOMAS ALLEN MEANS and LAURA LEESHA MEANS<br><br>Appellants,<br>v.<br>DAVID Y. FARMER, Chapter 7 Trustee, and KRISTIE BOND<br><br>Appellees. | Case No. 2:10-cv-9703-ODW<br><br>**OPINION ON APPEAL FROM BANKRUPTCY COURT**<br><br>Bankruptcy Case No. 9:09-bk-12268-RR<br>Adversary Case No. ND09-1271-RR |

Appellants-Debtors Thomas and Laura Means bring this appeal challenging the bankruptcy court's November 5, 2010 Order approving the settlement between Kristie Bond and David Farmer, the Chapter 7 Trustee. Having carefully considered the papers filed in support of and in opposition to this appeal, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15.

## I. BACKGROUND

The settlement at issue governs the Trustee's adversary complaint against Kristie Bond, sister to Laura Means. The adversary complaint alleged that Laura fraudulently conveyed property to her father, Francis Priest, to shelter it from the bankruptcy estate. Upon motion, the bankruptcy court entered summary judgment in favor of the Trustee. Bond appealed. Subsequently, Bond and the Trustee reached a settlement. Appellants filed this appeal challenging the bankruptcy court's order approving the settlement, arguing that: (1) the bankruptcy court did not perform a proper evaluation of the settlement; (2) the Trustee provided insufficient notice of the motion seeking approval of the settlement; and (3) Appellants were deprived of their due process rights because they were not a named defendant in the adversary action.

**A.   The property**

In 2003, Priest executed a will, bequeathing his house on Old Rose Drive in Las Vegas, Nevada to his daughter Laura. (Appellee's Br. 2.) In February 2006, he transferred the house to himself and Laura as joint tenants. (*Id.*) Then, because of Laura's looming financial troubles, she transferred her interest in the house back to Priest in 2008, making him the sole owner. (*Id.* at 2–3.)

On June 10, 2009, Laura and her husband filed a joint Chapter 7 bankruptcy petition and David Farmer was appointed as trustee to their bankruptcy estate. (*Id.* at 1.) After Laura and her husband filed bankruptcy, Priest executed a new will disinheriting Laura and bequeathing all of his property, including the house, to his other daughter, Kristie Bond. (*Id.* at 5.)

**B.   The fraudulent transfer adversary complaint**

In 2009, the Trustee filed an adversary complaint against Priest, alleging the 2008 transfer of Laura's interest in the house to Priest was a fraudulent conveyance under Bankruptcy Code section 548. (*Id.* at 3.) Specifically, the complaint alleged the conveyance was fraudulent because Laura was insolvent at the time of the transfer and received no consideration for the transfer. (*Id.*)

Priest died on December 6, 2009. (*Id.*) As a result of Priest's death and the 2009 will, the house transferred to Bond by operation of law. (*Id.*) The Trustee then amended the complaint to name Bond as the defendant. (*Id.*)

After discovery in the adversary case, Bond and the Trustee each filed a motion for summary judgment. (*Id.*) The bankruptcy court granted summary judgment in favor of the Trustee. (*Id.* at 5.) Bond appealed the summary judgment order. (*Id.*)

**C.     The Nevada probate action**

After Priest's death, Laura filed a petition, presently pending in Nevada state court (Case No. P-10-067454-E), challenging his 2009 will. (*Id.* at 5; Appellants' Opening Br. 8.) Priest died 179 days after Laura filed for bankruptcy. (Appellee's Br. 5.) The law provides that the bankruptcy estate includes all property the debtor stands to receive under a will within 180 days of filing the bankruptcy petition. 11 U.S.C. § 541(a)(5). Therefore, if the 2009 will were invalidated, and Laura were to receive property under the 2003 will, such property would be property of the bankruptcy estate. (Appellee's Br. 5.)

In addition to the house, Priest's estate also included a proof of claim in Laura's bankruptcy case in the amount of $58,940.96. (*Id.* at 6.) After his death, the proof of claim became an asset of his probate estate and would therefore pass under his will. (*Id.*) Under the 2009 will, Bond would receive any distribution from Laura's bankruptcy estate on account of Priest's proof of claim. (*Id.*)

**D.     The settlement**

After Bond filed the notice of appeal of the bankruptcy court's summary judgment order, Bond and the Trustee began to negotiate a settlement. (*Id.*) In connection with the settlement discussions, the Las Vegas property was appraised at $174,000. (*Id.*) The Trustee determined that the property's net value to the bankruptcy estate was approximately $165,000. (*Id.*) Subsequently, the parties finalized the settlement. (*Id.*)

/ / /

Under the settlement, Bond agreed to pay the Trustee $105,000 in cash and withdraw the proof of claim filed by Priest. (*Id.*) In exchange, the Trustee agreed to dismiss the adversary complaint with prejudice, allowing Bond to retain title to the house. (*Id.*) Further, the Trustee agreed to quitclaim to Bond any rights the Trustee could assert in the Nevada probate case. (*Id.*)

### E.     The settlement approval hearing

After Bond and the Trustee reached their settlement, the Trustee filed a motion in the bankruptcy court seeking approval of the settlement. (*Id.* at 7.) Appellants filed an opposition attacking the settlement, specifically the Trustee's agreement to transfer its rights in the probate case to Bond. (*Id.*) During the hearing, the bankruptcy court found that the agreement needed to be modified. (*Id.*) In response to Appellants' opposition and in anticipation of the court's objection, the parties modified the settlement eliminating the elements of the probate case. (*Id.* at 8.) Under the modified settlement, Bond would pay the Trustee $105,000 in cash and the Trustee would dismiss the adversary complaint with prejudice, thereby granting Bond undisputed title to the property.[1] (*Id.*)

Appellants were represented at the hearing and objected to the modified settlement. (Hr'g Tr. 8:18–9:23.) The bankruptcy court found that the modified settlement was a compromise of litigation. (Appellee's Br. 8.) The court specifically noted that this was not a sale of property because title to the property was still under Bond. (*Id.*) Further, the court commented that there are costs and uncertainties associated with litigating the appeal of the adversary complaint; and by settling, the estate would be spared these costs. (*Id.*)

Dissatisfied with the modified settlement, Appellants appealed to this Court. (Appellants' Opening Br. 1–2.) Appellants list seven issues on appeal. (*Id.*) The Court concludes these issues are duplicative and can be collapsed into three issues.

---

[1] The adversary complaint was on appeal. The bankruptcy court granted summary judgment in favor of the Trustee. (*Id.* at 5.)

The first issue is whether the bankruptcy court properly evaluated the settlement by ensuring it was fair and equitable prior to its approval.[2]  The second issue is whether the Trustee provided sufficient notice of the settlement approval motion.  The third issue is whether Appellants were deprived of due process because they were not named as defendants in the adversary complaint.  The Court addresses each in turn.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 158(a), district courts have jurisdiction to review any final judgment, order, or decree of a bankruptcy court.  *In re Vylene Enters., Inc.*, 968 F.2d 887, 889 (9th Cir. 1992).  The Ninth Circuit has defined a final decision in the bankruptcy context as one that "'ends the litigation on the merits and leaves nothing for the court to do but [to execute the] judgment.'"  *In re Martinez*, 721 F.2d 262, 265 (9th Cir. 1983) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

When reviewing a bankruptcy court's decision, the district court functions as an appellate court and applies the same standard of review as a federal court of appeals.  *Beal Bank v. Crystal Props., Ltd., L.P.*, 268 F.3d 743, 755 (9th Cir. 2001).  A district court may affirm a bankruptcy court order on any ground supported by the record, even if the bankruptcy court relied on the wrong grounds or wrong reasoning.  *Id.*  The bankruptcy court's legal conclusions are reviewed *de novo* and its factual findings are reviewed under the clear error standard.  *In re Tucsco Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  The bankruptcy court's approval of a settlement is reviewed under the abuse of discretion standard.  *In re Arden*, 176 F.3d 1226, 1228 (9th Cir. 1999).

/ / /

/ / /

---

[2] Appellants argue that the bankruptcy court erred and abused its discretion because: (1) the court failed to make findings of facts or conclusions of law; (2) the Trustee failed to provide the court with adequate information; (3) the court did not perform an informed and independent examination; (4) the court failed to examine and address the *A&C* factors; and (5) the resulting settlement was not fair and equitable or in the best interest of the creditors.  (*Id.*)

### III. DISCUSSION

The bankruptcy court's settlement approval order constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1). Thus, this court has jurisdiction over this appeal.

**A. Proper evaluation of the settlement**

Federal Rule of Bankruptcy Procedure 9019 governs compromises and settlements reached in bankruptcy court; it provides, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. In examining a proposed settlement, the bankruptcy court must evaluate four factors, commonly referred to as the *A&C* factors:

> (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation, as well as the expense, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of creditors, giving proper deference to their reasonable views [regarding the proposed compromise].

*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A&C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

A compromise agreement allows the trustee and the creditors to avoid the expenses and burdens associated with litigation. *Id.* at 1380–81. In general, compromises are favored in bankruptcy actions. *In re Stein*, 236 B.R. 34, 37 (D. Ore. 1999). The court generally gives deference to a trustee's business judgment. *See In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

Although a bankruptcy court may not simply rubber-stamp the decision to enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-trial on the merits of the claims, or require that the settlement be the best possible. *In re Walsh Constr., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, a bankruptcy court "need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." *In re Pac. Gas*, 304 B.R. at 417 (citing *In re A&C*, 784 F.2d at 1381).

/ / /

Appellants argue that the bankruptcy court abused its discretion because it did not properly evaluate the settlement agreement. (Appellants' Opening Br. 16.) Appellants contend that as a result, the settlement was unfair and inequitable. (*Id.* at 29.) The Court disagrees.

The bankruptcy court did not blindly approve the settlement. At the hearing, the bankruptcy judge told the parties he would not approve the current settlement because it appeared that the Trustee did not give "due consideration to the potential claims of the estate against the probate." (Hr'g Tr. 4:22–5:1.) In response to the Appellants' opposition and in anticipation of the bankruptcy court's objection, Bond and the Trustee modified the settlement, striking both Bond's withdrawal of Priest's proof of claim and the Trustee's agreement to transfer his rights in the probate case to Bond. (*Id.* at 7:18–23; 8:7.) Under the modified settlement, Bond would pay the Trustee $105,000 in cash and the Trustee would dismiss the adversary complaint with prejudice, thereby granting Bond undisputed title to the property. (*Id.* at 8:23–25.)

Further, the court recognized that the property was essentially being exchanged for $105,000, but the property was worth at least $175,000.[3] (*Id.* at 9:20–10:2.) The court found this to be acceptable in light of the remaining litigation risk. (*Id.*) The reduced price of the house was part of a compromise taking into account the time, cost, and possibility of an unfavorable result on the appeal. (*Id.* at 9:20–25.)

Appellants argue that this settlement is unfair because the Trustee gave Bond valuable property in exchange for dismissal of a "simple appeal." (Appellants' Opening Br. 30.) Appellants' characterization of the "simple appeal" considers only the possibility of a substantially higher judgment. It fails to take into account the Trustee's risk of losing the appeal. That is, instead of obtaining $105,000 under the settlement, the Trustee could have lost the appeal, thereby forfeiting the property to Bond without payment. The goal of the Trustee is to maximize the return for the

---

[3] This was not a sale because no transfer of title was necessary. At the time, title was already under Bond via Appellants' transfer of the property to Priest and from Priest to Bond through Priest's will. (*Id.* at 9:3–19.)

creditors. *LeBlanc v. Salem*, 212 F.3d 632, 635 (1st Cir. 2000). Making this settlement ensured financial gains for the bankruptcy estate.

The Court finds the bankruptcy court properly evaluated the *A&C* factors and took into account the probability of success, the complexity and expense of the litigation, and the interest of the creditors. There is no evidence in the record to suggest that the settlement was not fair nor equitable.

**B.     Notice of motion**

With respect to notice, Appellants argue the Trustee's notice of settlement to creditors of the bankruptcy estate was insufficient under the Federal Rules of Bankruptcy Procedure. (Appellants' Opening Br. 17–18.) In addition, they contend no notice of the modified settlement was given. (*Id.* at 20–21.)

Under Federal Rule of Bankruptcy Procedure 9019(a), "[n]otice shall be given to creditors, the United States Trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a). Rule 2002 establishes a 21-day notice period for the hearing on approval of the compromise and settlement of a controversy. Fed. R. Bankr. P. 2002(a)(3).

There is no evidence in the record that notice of the motion approving the settlement was not properly given to the creditors. Further, the Court finds that additional notice concerning the modified settlement agreement was unnecessary. First, interested parties were put on notice by the original notice of motion—if so inclined, these parties could have appeared (at which time they could have objected to the modified settlement).[4] Second, no parties opposed the settlement agreement other than the Appellants; it was unlikely that an interested party would suddenly appear at the settlement hearing without filing an opposition. Third, the modified settlement only worked to the benefit of the bankruptcy estate, because the bankruptcy estate reclaimed its rights to fight the probate action. (Hr'g Tr. 7:18–23.) Thus, if an

---

[4] There was no additional hearing on the modified settlement agreement. There was only one settlement hearing. (Appellants' Opening Br. 20.)

interested party did not oppose the original settlement, it was unlikely that it would oppose the modified settlement. Finally, the alleged notice deficiencies did not actually prejudice the Appellants—they were active in the litigation (they filed an opposition to the settlement motion) and were represented by their attorney at the hearing. (Appellee's Br. 7; Hr'g Tr. 1:19-20.)

A fundamental requirement of due process in any proceeding is notice reasonably calculated to apprise interested parties of the action and afford them an opportunity to present their objections. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985). Even if notice of the modified settlement was required and Appellants did not receive actual notice, their attorney was present at the hearing and made objections on their behalf. (Hr'g Tr. 1:19-20; 9:9-23.) Because Appellants were provided an opportunity to present their objections, the bankruptcy court did not violate their due process rights. *See Fitzgerald v. Ninn Worx SR, Inc.*, 428 B.R. 872, 882 n.11 (B.A.P. 9th Cir. 2010) (the court noted that appellant debtor was present at the sale hearing and bid on the property).

## C.   Deprivation of due process

Finally, Appellants contend that their due process rights were violated because they were never named as defendants in the adversary action concerning the property. The Court agrees with the Trustee's argument that Appellants did not have an interest in the property. Title was held by Priest, who subsequently died and passed the property to Bond. (Appellee's Br. 3.) Without an ownership interest in the property, Appellants have no due process rights to assert concerning any action relating to the property. Appellants cite no case law suggesting otherwise. Thus, the Court finds that it was proper for the Trustee to not name Appellants as defendants in the adversary action.

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the bankruptcy court's order approving the settlement.

**IT IS SO ORDERED.**

May 3, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**